# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Add-On Computer Peripherals, LLC,   Civil No. 19-2725 (DWF/ECW)

        Plaintiff,

v.   **MEMORANDUM OPINION AND ORDER**

Mary Harris,

        Defendant.

_____

Barbara P. Berens, Esq., Carrie L. Zochert, Esq., and Erin K. Fogarty Lisle, Esq., Berens & Miller, PA; and Justin Kalani Beyer, Esq., and Kevin J. Mahoney, Esq., Seyfarth Shaw LLP, counsel for Plaintiff.

Andrew P. Muller, Esq., Muller & Muller, PLLC; and John Arthur Klassen, Esq., John A. Klassen, PA; and Robert A. McMahon, Esq., Eberly McMahon Copetas LLC, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant Mary Harris's Motion to Dismiss and/or to Transfer. (Doc. No. 27.) For the reasons set forth below, the Court grants the motion in part and orders that the case be transferred to the United States District Court for the Central District of California, Southern Division.

## BACKGROUND

Plaintiff Add-On Computer Peripherals, LLC ("AddOn") is a California limited liability company with its principal place of business in Tustin, California. (Doc. No. 1 ("Compl.") ¶ 19.) AddOn sells fiber optical networking equipment in the United States and internationally. (*Id.* ¶ 2; Doc. No. 36 ("Mahoney Decl.") ¶ 2, Ex. A ("McCormick

Decl.") ¶ 3.) In December 2017, AddOn merged with ProLabs USA, Inc. ("ProLabs"), another networking equipment company. (McCormick Decl. ¶ 4.) Prior to the merger, ProLabs was headquartered in Edina, Minnesota. (*Id*. ¶ 5.) AddOn operates two offices in Minnesota, its only offices outside of California. (*Id*.)

Defendant Mary Harris ("Harris") lives in Ohio and in the fall of 2015 started working for ProLabs as Director of National Accounts. (Doc. No. 30 ("Harris Decl.") ¶¶ 2, 6, Ex. A.) Shortly after she began working for ProLabs, Harris signed a Confidentiality, Non-Solicitation and Non-Competition Agreement with ProLabs (the "ProLabs Agreement").[1] (Compl. ¶ 9.) The ProLabs Agreement prohibited Harris from soliciting employees or customers or competing with ProLabs for customers or potential customers for a period of twelve months after leaving ProLabs. (Mahoney Decl. ¶ 3, Ex. B (ProLabs Agreement) ¶¶ 2, 3.) In addition, Harris was prohibited from disclosing ProLab's confidential information and trade secrets. (*Id*. ¶ 1.) The ProLabs Agreement also contains the following language:

> Any controversy or claim rising out of or relating to this contract, or the breach thereof, shall be settled by binding arbitration in Minneapolis, Minnesota before a single arbitrator in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof provided, however, that Employer reserves the right to such enforcement of the Covenant not to compete and the restriction on use of confidential information and trade secrets in any court in the State of Minnesota and shall not be required to pursue any such claim through arbitration.

(*Id*. ¶ 5(a).)

---

[1] Harris signed the agreement at her home in Ohio and emailed a copy to the Vice President of Sales at ProLabs in New Jersey. (Harris Decl. ¶ 11.) Harris never received a copy of the ProLabs Agreement executed by ProLabs. (*Id*. ¶ 12.)

2

When ProLabs merged with AddOn, Harris became an employee of AddOn. (McCormick Decl. ¶ 4; Harris Decl. ¶ 19.)[2] On March 22, 2018, Harris entered into a Confidentiality and Proprietary Rights Agreement with AddOn. (Harris Decl. ¶ 21; Mahoney Decl. ¶ 4, Ex. C (the "AddOn Agreement").)[3] The AddOn Agreement addresses, among other things, the protection of and disclosure and use restrictions related to AddOn's confidential and trade secret information (including, but not limited to, information related to existing and prospective customers and suppliers) and Harris's agreement to assign inventions created during the course of her employment with AddOn. (*Id*. ¶¶ 1-2.) The AddOn Agreement also contains the following provisions:

> GOVERNNG LAW, JURISDICTION and VENUE. This Agreement, for all purposes, shall be construed in accordance with the laws of California without regard to conflicts-of-law principles. Any action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of California, county of Orange. The parties hereby irrevocably submit to the [non-]exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

(*Id*. ¶ 9.)

> ENTIRE AGREEMENT. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and Employer pertaining to the subject matter hereof and

---

[2] Harris disputes that ProLabs merged into AddOn. (Harris Decl. ¶ 16.) But there is no dispute that Harris became an employee of AddOn. (*Id*. at ¶¶ 19-21.) At AddOn, Harris continued to perform essentially the same duties that she had for ProLabs. (McCormick Decl. ¶ 20.)

[3] AddOn claims that as the successor to ProLabs, it retained the right to enforce the ProLabs Agreement. However, Harris contends that no one at AddOn told her that the ProLabs Agreement would remain in effect and that she believed the AddOn Agreement superseded all prior agreements. (Harris Decl. ¶ 20.)

> supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

(*Id.* ¶ 10.) Harris resigned from AddOn effective July 7, 2019 and began working for Axiom Memory Solutions, Inc. ("Axiom"), a California corporation. (Compl. ¶ 7; Harris Decl. ¶ 30.) Axiom is a competitor of AddOn. (Compl. ¶ 7.) AddOn alleges that following her departure, Harris improperly solicited AddOn's customers and employees in violation of her non-competition obligations, misappropriated AddOn's trade secrets, and improperly used and divulged AddOn's confidential information.

Harris presently moves to dismiss this case for lack of personal jurisdiction and/or improper venue, or in the alternative, to transfer this case to the United States District Court for the Central District of California, Southern Division.

## DISCUSSION

The Court has authority under 28 U.S.C. § 1404(a) to transfer venue whether or not it has jurisdiction, as long as the action could have been brought in the transferee court. *See Coast-to-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 732 (D. Minn. 1984). Because, as discussed below, the Court determines that the Central District of California is the most appropriate venue in this case, the Court declines to reach the question of whether the Court has personal jurisdiction over Harris.

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When deciding a motion to transfer, the Court must consider the convenience of the parties, the

4

convenience of the witnesses, and the interests of justice. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). In considering these factors, the Court must make a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* The burden is on the party seeking the transfer "to show that the balance of factors 'strongly' favors the movant." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999). The Court will consider whether venue in the Central District of California is proper and, if so, address the case-specific factors.

As an initial matter, the Court finds that the existence of the California forum-selection clause in the AddOn Agreement drives the analysis. The AddOn Agreement is clearly implicated by AddOn's claims against Harris, which include but are not limited to claims of misappropriation of trade secret or confidential information.[4] The AddOn Agreement provides a broad definition of such information and sets forth disclosure and use restrictions of the same. The Court finds that this action is at least in part an effort to enforce the terms of the AddOn Agreement. Importantly, the AddOn Agreement provides that "[a]ny action or proceeding by either Party to enforce this Agreement shall be brought only in any state or federal court located in the state of California, county of Orange." (AddOn Agreement ¶ 9.) In addition, the AddOn Agreement provides that

---

[4] AddOn argues that the ProLabs Agreement (and its Minnesota forum-selection clause) applies here and that the AddOn Agreement (and its California forum-selection clause) is not relevant to this dispute. Harris, on the other hand, argues that this action implicates the AddOn Agreement and, therefore, the AddOn Agreement's California forum-selection clause applies.

5

"this Agreement contains all the understandings and representations between the Employee and Employer pertaining to the subject matter hereof and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter." (*Id*. ¶ 10.) AddOn argues that the AddOn Agreement does not supersede the ProLabs Agreement because the AddOn Agreement is limited to narrow topics and the ProLabs Agreement pertains to different subject matter. The Court is skeptical of such a narrow reading of the AddOn Agreement but need not decide the broader issue of whether enforceable provisions of the ProLabs Agreement remain. Instead, these issues are properly resolved at a later stage of litigation. For the purposes of the present motion, the Court simply finds that the claims asserted against Harris in this lawsuit attempt to enforce provisions of the AddOn Agreement. And therefore, the Court also finds that the California forum-selection clause applies and venue is proper in the Central District of California.

Next, the Court considers the relevant section 1404 factors, beginning with the convenience of the parties. While there is normally a presumption in favor of the plaintiff's choice of forum, that presumption is weakened here. As discussed above, AddOn agreed to a California forum for disputes regarding the AddOn Agreement. In addition, AddOn is a California company and Harris, while living in Ohio, presently works for a California company and regularly travels to the state. (Harris Decl. ¶¶ 30-31.) This makes the convenience of the parties weigh heavily in favor of a California venue.

The convenience of witnesses is an important factor for the Court and the parties because it affects the access to sources of proof. In considering the issue of convenience to witnesses, courts have focused on several factors including the number of non-party witnesses, the location of all witnesses, and the preference of courts for live testimony as opposed to depositions. *Graff*, 33 F. Supp. 2d at 1121. Harris has demonstrated that most witnesses live, and most relevant documents are located, in California. The Court finds that the convenience of the witnesses weighs in favor of transfer.

Finally, the Court must evaluate what venue will best promote the interests of justice. *Graff*, 33 F. Supp. 2d at 1122. This factor is weighed "very heavily." *Id.* A number of relevant considerations include judicial economy, the plaintiff's choice of forum, the costs of litigating in each forum, obstacles to a fair trial, choice of law issues, and the advantages of having a local court determine questions of local law. *Id*. At its core, this case involves a California company trying to restrict a former employee who works in California. AddOn's choice of a Minnesota forum is not entitled to deference here because the AddOn Agreement contains a California forum-selection clause. In addition, AddOn is located in California and would not likely bear increased costs to litigate there. On balance, the Court finds that the interests-of-justice factor weighs in favor of transfer.

After analyzing and weighing the section 1404(a) factors in light of the facts of this case, the Court finds that Harris has met her burden of demonstrating that the balance

of factors strongly favors her request to transfer the case to the Central District of California. For the above reasons, the Court grants Harris's motion to transfer.[5]

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and/or to Transfer (Doc. No. [27]) is **GRANTED IN PART** as follows:

1. This case is properly transferred to the United States District Court for the Central District of California, Southern Division.

2. The Clerk of Court shall transfer this case to the United States District Court for the Central District of California, Southern Division.

Dated: April 8, 2020                       s/Donovan W. Frank
                                               DONOVAN W. FRANK
                                               United States District Judge

---

[5] The Court notes that even if venue in this district is improper and therefore within the Court's power to dismiss, the Court would not find dismissal to be warranted. Instead, the better approach is to transfer the action to California.